HABERKORN INVESTMENT CO. *v.* MORAN.

PRINCIPAL AND SURETY—BONDS—FAILURE TO NOTIFY SURETY OF DEFAULT—RELEASE OF SURETY.

This case is ruled by *Berkshire Land Co.* v. *Moran, ante,* 77.

Error to Wayne; Hunt (Ormond F.), J. Submitted April 27, 1920. (Docket No. 91.) Decided June 7, 1920.

Assumpsit by the Haberkorn Investment Company against William E. Moran, principal, and the Fidelity & Deposit Company of Maryland, surety, on a bond. Judgment for plaintiff on a directed verdict against the principal only. Plaintiff brings error. Affirmed.

*Douglas, Eaman, Barbour & Rogers,* for appellant.

*Keena, Lightner, Oxtoby & Hanley,* for appellee surety.

STONE, J. This case was brought to this court by the plaintiff on writ of error to review a judgment for the defendant Fidelity & Deposit Company of Maryland, entered upon a directed verdict, in the court below. On April 6, 1916, the plaintiff entered into a contract with the defendant William E. Moran for certain construction necessary for placing a real estate subdivision, in the county of Wayne, upon the market. This construction involved the paving of Lake Shore Drive, and Harvard Shore Drive, and also the building of a sea wall and sewer outlet wall with back fillings and gradings incidental to this work. The contract provided an option for the cancellation of the paving of Harvard Shore Drive, by written notice, and this option was exercised by the plaintiff

on July 8, 1916. The contract further provided that a bond in the sum of $20,000 should be furnished by the defendant Moran. The total consideration for the work to be done, provided the option above mentioned was exercised, was stated in the contract as $20,188.86. The work on Lake Shore Drive was to have been completed on or before the 3d day of August, 1916. In accordance with the terms of this contract a bond in the sum of $20,000 was entered into, wherein William E. Moran was principal, and the Fidelity & Deposit Company of Maryland, hereafter called the surety company, was surety, providing for the performance of the above mentioned contract according to its terms, covenants and conditions. This bond, among other things, provided as follows:

"The owner, as a condition precedent to any recovery hereunder, shall faithfully perform all the terms, covenants and conditions set forth in said contract and in this bond, or in either of them, to be performed by the owner at the time and in the manner specified.

"The owner shall notify the surety by registered letter, addressed and mailed to the surety at its home office in Baltimore, Maryland, of any breach of said contract by the principal, or any act or omission, of the principal, or of any agent or employee of the principal which may involve or cause a loss for which the surety may be liable, immediately after such breach or act or omission shall have come to the knowledge of the owner, or any representative of the owner authorized to supervise the performance of said contract, and if the principal abandons said contract, or is lawfully compelled by reason of a default to cease operations thereunder, the surety shall have the right at its option to assume the contract and to sublet or complete the same," etc.

The defendant Moran failed to complete the work as specified in the contract, and on September 25, 1916, the surety company was notified by the plaintiff to that effect. Further notice of default was sent to

the defendant surety company by registered letter on September 29, 1916, and the surety was also informed that the plaintiff would relet contracts for the work left uncompleted by the defendant Moran.

It should be stated that defendant Moran not only failed to complete the work, but the record shows that he never started it. His contract called for the paving of Lake Shore Drive, and to have the same completed on or before August 3, 1916. Not only did Moran not start the work, but the record shows that on July 29, 1916, the plaintiff wrote Moran reminding him of the conversation of the day before in which he promised to begin work on the pavement not later than August 10th. That letter states that the plaintiff was going to write to the surety company that they were giving Moran until August 10th to begin work on the contract; but the record shows that no such notice was ever sent to the surety company, and the first notice to that company was September 25, 1916. Mr. Haberkorn, the president and general manager of the plaintiff, testified as follows:

"In my best judgment he could have been reasonably expected to start to work laying this pavement on July 1st at the very latest, by reason of conditions left by the other contractors on Lake Shore Drive. In order to be laying the pavement by July 1st, the excavating should have been done in less than a week. I don't say when he should get his contract done. A couple of weeks before that, I realized that the job could not be done on August 3, 1916."

It was nearly three months from July 1st before the defendant surety company had any notice of the default. Mr. Haberkorn further testified: "But I said I would not push Mr. Moran if he was going ahead with the work."

It is fair to state that Mr. Haberkorn knew by July 1st there would be a default on the part of defendant Moran. It also appears, clearly from this record, that

the officers of the plaintiff knew that the price of ma-
terials was going up, and that labor was scarce, and
Mr. Haberkorn testified that when he got new bids in
October they were about $8,000 higher than defend-
ant Moran's contract. Mr. Moran's contract was $3,-
725.50 for the sea wall, and $16,463.36 for the paving,
aggregating $20,188.86; and when the work was relet
to the Midland Company the price was $5,960 for the
sea wall, and $21,443.10 for the paving, aggregating
$27,403.10, a difference of $7,214.24. In other words,
it shows that there was an increase in the cost of
labor and materials over the period of six months be-
tween April and October, 1916, of about 33 1/3 per
cent.

Under date of October 16, 1916, the surety com-
pany advised the plaintiff that it did not desire to
exercise any rights it might have to complete the con-
tract; and, further, that at the proper time it stood
ready to take up the question of its liability on the
bond, "upon the distinct understanding, however, that
at this time we reserve all rights, and this communi-
cation is not to be construed as a waiver of any de-
fenses we have under our bond."

The plaintiff, under date of March 27, 1917, exe-
cuted a contract with the Midland company identical
in form with the Moran contract, and based upon the
same plans and specifications, at an increase of prac-
tically $7,215.

Certain other correspondence appears in the state-
ment of facts by plaintiff; but as this correspondence
has a bearing upon the plaintiff's claim that it was
excused from bringing suit upon the bond within the
time specified in paragraph 7 therein (a matter that
we shall not have occasion to discuss), we omit that
part of the statement.

After the introduction of evidence and a motion for
a directed verdict on behalf of the surety company,

the trial court directed a verdict in behalf of said defendant company of no cause of action, and against the defendant William E. Moran in the amount of $7,977.39, and judgment was entered accordingly.

It is against this action of the trial court that error is assigned. There are four assignments of error, and of them counsel for plaintiff and appellant say:

"Only four assignments of error are set forth in the record, and they are in fact cumulative, the principal and controlling one being that the court erred in directing a verdict in behalf of the defendant, the Fidelity & Deposit Company of Maryland. The other three assignments simply set up the charge of the court with reference to the direction of the verdict."

After quoting the language of the bond, heretofore set forth, the trial court in its charge said:

"It appears by this contract, that is, the original contract, that what is known as the Lake Shore Drive shall be completed on or before August 3, 1916. I will read that part of the original contract between the plaintiff and Moran:

" 'The party of the second part (that is Moran) is to pave Lake Shore Drive first, and have the same completed on or before August 3, 1916.'

"That is one of the agreements on the part of Moran. It appears in this case that Moran did not even begin, much less finish the Lake Shore Drive. I think that it is conceded that he had done nothing, and certain negotiations were had between the plaintiff and Moran about a postponement, that is, to allow him to do the work later, and under the undisputed evidence in this case no notice whatsoever was sent by the owner—by the plaintiff in this case to the defendant surety company, until a notice under date of September 25, 1916, was sent saying this work was to be completed by August 3d. This was the contract that the surety company agreed to guarantee; and I charge you as a matter of law that that was a condition precedent; that is, the plaintiff alleges in his declaration that he was to perform all the conditions by him to be performed, and one of the conditions was, if there should

be any delay or default on the part of this contractor, that he would immediately notify the surety, and he did not do it."

And for the foregoing reason, as we understand the record, a verdict was directed in favor of the surety company.

In our opinion this case is governed and ruled by the recent case of *Berkshire Land Co.* v. *Moran,* in which an opinion, written by Justice STEERE, was filed on April 10, 1920, and is now reported *ante,* 77. The two cases are very similar in their facts, so much so that counsel for the plaintiff in the instant case, in their brief which was prepared before the opinion in the *Berkshire Land Company Case* was promulgated, said:

"We call the attention of the court to a case now pending in this court, being the case of Berkshire Land Co. *v.* William E. Moran and Fidelity & Deposit Co. In that case, it will appear just as in the present one, that the owner had the same trouble in securing a reply from the surety company and when the reply came, it was self-protective and evasive, and that no steps were taken to carry out the contract on the part of the surety company, and we submit that under the showing in this case, there is no evidence that the surety company would have taken any different course had it been notified thirty days earlier."

In the *Berkshire Land Company Case* it appears that Moran commenced work early in April and did some grading, abandoning the work in August, and that the first notice to the surety company of his default was August 30, 1916. In that case this court said that the conditions were such that it was apparent about the last of June or first of July that the work could not be completed by August 1st. A notice of default was sent August 30th, a month earlier than notice was sent in the instant case, although the default in this case was much greater than the default of Moran in the *Berkshire Land Company Case.* In

the *Berkshire Land Company Case* this court said in part:

"Clearly under such conditions it was not an unnatural nor a supertechnical precaution to provide in an indemnity bond for faithful performance of an improvement contract that the surety should be promptly notified of any breach of the contract or any other act or omission on the part of the principal which might involve or cause a loss for which the surety might be answerable.   *   *   *

"Spitzley, himself, early knowing of delays and familiar with existing conditions, of which the surety was not advised, recognized a probable loss and the advisability of prompt action while Moran was yet on the job, urging him that the quicker he got through the less money he would lose and says, he 'came to the conclusion that they (the improvements) could not be put in (that summer) unless Mr. Moran got busy the forepart of August'; but no notice of delays, Moran quitting the job or any other default was given the surety in compliance with the condition precedent until on or after August 30th, although the conditions as shown to Spitzley had become such by the last of June or first of July that it was apparent the work could not be completed by August 1st.   *   *   *

"Under the undisputed facts in this case the trial court rightly held as a matter of law that plaintiff prejudicially neglected to promptly and within a reasonable time give the surety due notice as contemplated in the contract between the parties.  Under the circumstances shown such palpable and prejudicial default in a material condition precedent was a substantial breach of the contract which discharged the surety."

Having reached the conclusion that the instant case is ruled by the *Berkshire Land Company Case,* it is unnecessary to consider the other questions argued by counsel, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.